```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
YAJAIRA ROSARIO,                                                 :
                                                                 :
                                   Plaintiff,                    :
                                                                 :         20-cv-5831 (LJL)
             -v-                                                 :
                                                                 :         OPINION AND ORDER
FRESH SMOOTHIES LLC, FRESH FRUTII LLC,                           :
ROBINSON CAPELLO, and JOHN FRANCIS RIVERA,                       :
                                                                 :
                                   Defendants.                   :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/9/2021

LEWIS J. LIMAN, United States District Judge:

Plaintiff Yajaira Rosario ("Plaintiff" or "Rosario") filed this action on July 27, 2020, against Fresh Frutii LLC ("Fresh Frutii") and Fresh Smoothies LLC ("Fresh Smoothies" and, with Fresh Frutii, the "Companies"), and Robinson Capello and John Francis Rivera, who are identified as the officers, directors, shareholders and/or persons in control of the Companies (with the Companies, collectively, "Defendants"). Dkt. No. 1 ("Compl."). Rosario was employed as a food prepper at Fresh Frutii and Fresh Smoothies. Rosario brings claims under the Fair Labor Standards Act, 28 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), and the Internal Revenue Code ("IRC"). She seeks damages, including liquidated damages, interest, attorneys' fees, and costs. Compl. at 12–13. She further seeks an order and judgment determining that Fresh Frutii and Fresh Smoothies were part of a corporate combine and that they are liable for the amounts due in this action.

Plaintiff served the Summons and Complaint on Defendants, *see* Dkt. Nos. 13–16, but Defendants did not answer the Complaint or appear at an initial pre-trial conference. Rosario then obtained certificates of default against the Defendants, Dkt. Nos. 21, 22 and moved for

default judgment, Dkt. No. 23.  She served Defendants with the default judgment motion and supporting documentation, but Defendants still have not appeared. *See* Dkt. Nos. 32–35.  Rosario now moves for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  For the reasons discussed below, the Court orders the entry of default judgment against Defendants.

## BACKGROUND

By defaulting, Defendants have admitted the well-pleaded allegations in the Complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).  The Complaint alleges as follows.

Plaintiff was employed as a food prepper at Fresh Frutii from about June 2017 until about May 2018 and at Fresh Smoothies from about October 2018 until about September 13, 2019. Compl. ¶ 26.  From the beginning of her employment until in or around December 2017, Rosario worked approximately 51 hours per week. *Id.* ¶ 28.  Then, between January 2018 and in or around May 2018, Plaintiff worked approximately 59.5 hours per week. *Id.* ¶ 29.  From in or around October 2018 until the end of her employment on or around September 13, 2019, Plaintiff worked approximately 57 hours per week. *Id.* ¶ 30.  During her employment, she was not afforded any meal or rest breaks. *Id.* ¶ 31.

Plaintiff received the following pay for her work: From the beginning of her employment in about June 2017 until about November 2017, Plaintiff was paid $9.50 per hour for each hour worked, including those over forty hours per week. *Id.* ¶ 32.  From about December 2017 until about May 2018, Plaintiff was paid $10.00 per hour for each hour worked, including those over forty hours per week. *Id.* ¶ 33.  From about October 2018 until about December 2018, Plaintiff was paid $11.00 per hour for each hour worked, including those over forty per week. *Id.* ¶ 34.

And from about January 2019 until the end of her employment in September 2019, Plaintiff was paid $15.00 per hour for the first twenty hours worked per week by check, with withholdings for federal, state, and local tax, and then $11.00 per hour in cash, without any withholdings, for all additional hours worked, including those over forty hours per week. *Id.* ¶¶ 35, 36. During the time of her employment, Defendants failed to provide Plaintiff with payroll notices or wage statements, as required by NYLL §§ 195(1) and (3). *Id.* ¶¶ 40–42.

According to the Complaint, Robinson Capello and John Francis Rivera are officers, directors, shareholders, and/or persons in control of Fresh Smoothies and Fresh Frutti. *Id.* ¶¶ 13, 15, 16. The Defendants jointly supervised Plaintiff and controlled her compensation. *See id.* ¶¶ 19–22. At the times relevant to Plaintiffs' claims, Fresh Smoothies and Fresh Frutti shared many of the same employees and utilized much of the same equipment and inventory. *Id.* ¶¶ 17, 18. Plaintiff alleges, "upon information and belief" that Fresh Frutii and Fresh Smoothies: operated as a single business operation, had records maintained by the same persons and entities, employed many of the same employees, and were each fragments of a larger business that were not maintained as separate corporate entities. *Id.* ¶¶ 87–91.

Plaintiff brings eight causes of action. The first cause of action is for a violation of the overtime provision of FLSA. *Id.* ¶¶ 43–49. The second through sixth causes of action are for violations of certain provisions of the NYLL related to: overtime, *id.* ¶¶ 50–56, minimum wage, *id.* ¶¶ 57–62, timely payment of wages, *id.* ¶¶ 63–70, providing payroll notices, *id.* ¶¶ 71–74, and providing wage statements, *id.* ¶¶ 75–78. The seventh cause of action is for a violation of the IRC by Defendants' willful filing of false information returns to the Internal Revenue Service. *Id.* ¶¶ 79–85. The eighth cause of action is for corporate combine. Plaintiff seeks a default judgment on each claim.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop, LLC*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3)

prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454-55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*. 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (citation omitted). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

**DISCUSSION**

The Court concludes that Plaintiff's allegations substantiate her claimed violations of the NYLL and the IRC, 26 U.S.C. § 7434, and her claim for corporate combine.

The Court has reviewed the materials submitted by Rosario and her counsel in connection with the instant application and also believes that a further inquest would be unnecessary. *See*

5

Dkt. Nos. 24–26.

I. **Claims under the FLSA and the NYLL**

As a preliminary matter, the well-pleaded allegations in the Complaint satisfy the jurisdictional prerequisites of the relevant FLSA and NYLL provisions. *See* 29 U.S.C. §§ 206(a), 207(a)(1); NYLL §§ 2, 190 to 199-A; *see generally Marcelino v. 374 Food, Inc.*, 2018 WL 1517205, at *9-10 (S.D.N.Y. Mar. 27, 2018). For the reasons explained below, these allegations also support Plaintiff's claimed violations of the overtime provisions of the FLSA, *see* 29 U.S.C. §§ 207(a)(1), 255(a), and of the overtime, minimum wage, wage notice, and wage statement provisions of the NYLL, *see* NYLL §§ 190 to 199-A, 652(1), 663, 195(1), 195(3).[1]

A. **Liability**

According to the Complaint, Plaintiff worked between fifty-one and fifty-nine-and-a-half hours per week, but she was never paid a higher rate for the time she worked over forty hours per week. This violates the FLSA, which requires that a covered employee "receive[] compensation for [her] employment in excess of [forty hours per week] at a rate not less than one and one-half times the regular rate at which [s]he is employed." 29 U.S.C. § 207(a)(1). It also violates New York law. *See* 12 N.Y.C.R.R. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA.).

---

[1] In her Complaint, Plaintiff plead a violation of the timely wage provision of the NYLL. *See* Compl. ¶¶ 63–70. In her brief in support of her motion for default judgment, however, Plaintiff does not argue that why she is entitled to default judgment on this count and notes that "[a]lthough Plaintiff also asserts claims for failure to timely pay wages under the NYLL, these damages are subsumed within Plaintiff's estimated minimum wage and overtime damages." Dkt. No. 26 at 9 n.1. This claim is thus deemed abandoned. *See Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013) ("[A] Court need not entertain an argument that was not briefed."); *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 97 (S.D.N.Y. 2020) (same).

Plaintiff's allegations also substantiate the violations of the minimum wage provision of the NYLL. Under New York law, employers in New York City who employ eleven or more employees, like Defendants, *see* Dkt. No. 25 ¶ 8, were required to pay their employees an hourly wage of: at least $11.00 per hour during 2017, when Rosario was making $9.50 and $10 per hour, Compl. ¶¶ 32, 33; at least $13.00 per hour during 2018, when Rosario was making $10 and $11 per hour, *id.* ¶¶ 33, 34; and $15.00 per hour during 2019, when Rosario was making about $12.40 per hour, *id.* ¶¶ 30, 35.[2] NYLL § 652 (1)(a)(i).

The NYLL requires an employer to provide an employee payroll notices and wage statements. *See* NYLL § 195(1), (3). Plaintiff alleges that Defendants provided neither. Compl. ¶¶ 40, 41, 71–78. These allegations are sufficient to substantiate violations of the timely payment, payroll notice and wage statement provisions.

**B.     Damages**

Under the FLSA, the applicable statute of limitations is two years, although it can be extended to three years upon a finding that the employer's violations were willful. 29 U.S.C. § 255(a). The applicable limitations period for NYLL claims is six years. NYLL § 663(3). As such, damages under NYLL are calculated from June 2017, when Rosario began her employment with Defendants.

Where a plaintiff brings claims under both the FLSA and NYLL, she "may not receive a 'double recovery' of back wages" or liquidated damages under both statutes. *Hernandez v.*

---

[2] From about January 2019 until the end of Plaintiff's employment in September 2019, Plaintiff was paid for the first twenty hours of work per week at the legal minimum wage rate of $15.00 per hour. *Id.* ¶ 35. Plaintiff was paid $11.00 per hour for all hours above twenty that she worked. *Id.* According to the Complaint, Plaintiff worked approximately fifty-seven hours per week during this time period. *Id.* ¶ 30. This means that she would have received $300 for her first twenty hours worked (at a rate of $15.00 per hour) and $407 for the remaining thirty-seven hours worked (at a rate of $11.00) per hour, for a total of $707 earned per week. Dividing that by the fifty-seven hours worked per week yields an hourly rate of roughly $12.40.

7

*Jrpac Inc.*, 2016 WL 3248493, at *31 (S.D.N.Y. 2016) (quoting *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980)); *see also Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) (interpreting NYLL and the FLSA "as not allowing duplicative liquidated damages for the same course of conduct."). Because NYLL provides for a higher minimum wage and a longer recovery period, the Court will focus its analysis on that statute.

An employee who brings an action under the FLSA or NYLL for unpaid wages must prove that she performed the work and was not compensated properly for her time. *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003). While the FLSA requires an employer to "make, keep, and preserve" records of employee wages, hours, and employment conditions, 29 U.S.C. § 211(c),"[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only . . . submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may reasonably be inferred.'" *Gonzalez v. Masters Health Food Serv. Inc.*, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (alteration in original) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)). An employee discharges his burden if he "can prove that [he] 'in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Jrpac*, 2016 WL 3248493, at *27 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). "This burden is 'not high' and may be met 'through estimates based on [the employee's] own recollection.'" *Jrpac*, 2016 WL 3248493, at *27 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)).

If an employee makes this showing, "[t]he burden then shifts to the employer to come

8

forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Jrpac*, 2016 WL 3248493, at *27 (quoting *Anderson*, 328 U.S. at 687–88). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Gonzalez*, 2017 WL 3835960, at *16 (quoting *Kuebel*, 643 F.3d at 362).

"A similar standard applies to unpaid compensation claims under NYLL." *Gonzalez*, 2017 WL 3835960, at *16; *see also Garcia v. JonJon Deli Grocery Corp.*, 2015 WL 4940107, at *4 n.8 (S.D.N.Y. Aug. 11, 2015) ("Courts use the same burden-shifting framework [as in the FLSA] to determine liability for unpaid overtime under the NYLL."). But under NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof. "NYLL § 196-a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (quoting NYLL § 196-a(a)); *see also Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017). NYLL is thus more demanding than the FLSA, which permits an employer to discharge its burden merely by undermining the reasonableness of an employee's evidence that he was underpaid. *Cf. Jrpac*, 2016 WL 3248493, at *27. In contrast, NYLL requires that an employer demonstrate by a preponderance of the evidence that it in fact paid its employees "wages, benefits and supplements." NYLL § 196-a(a); *see also Jrpac*, 2016 WL 3248493, at *36. And "[i]f an employer cannot satisfy its burden under the FLSA, it cannot satisfy the 'more demanding burden' of the NYLL." *Canelas*, 2017 WL 1233998, at *9 (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005)).

9

Defendants failed to defend against this action and did not provide Plaintiff with wage statements. Instead, Plaintiff has submitted a sworn statement attesting to the number of hours she worked per week, along with the hourly payments received for various time periods. Dkt. No. 25 ¶¶ 10–19. The Court accepts this as a best estimate and adequate proof. *See Teofilo v. Real Thai Cuisine Inc.*, 2021 WL 22716, at *4 (S.D.N.Y. Jan. 4, 2021) (finding a further inquest on damages to be unnecessary when provided with sworn statements from plaintiffs regarding their hours and pay). From its review of the evidence, the Court calculates that Plaintiff is entitled to $22,033.75 in back wages.[3]

Under the terms of NYLL § 663, Plaintiff is also entitled to liquidated damages "equal to one hundred percent of such underpayments found to be due," in the absence of a Defendant's showing of "a good faith basis to believe that its underpayment of wages was in compliance with the law." *See Rana*, 887 F.3d at 122–23. To present this defense, the employer must demonstrate that it took "active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132,142 (2d Cir. 1999); *cf. Rana*, 887 F.3d at 123 (explaining that there are "no meaningful differences" between the FLSA and NYLL liquidated-damages provisions). Even where a defendant employer has appeared in the action, the Second Circuit has observed that "the employer's burden [is] a difficult one, emphasizing that double damages are the norm and single damages the exception." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (internal quotation marks and alterations omitted). Defendants have not presented a "good faith" defense. Accordingly, Plaintiff is entitled to a liquidated damages award in the amount of 100% of her back wages

---

[3] This figure includes unpaid minimum wage and overtime pay. Plaintiff is owed $12,037.50 in unpaid minimum wage pay and $9,996.25 in unpaid overtime compensation.

award, or $22,033.75.

The NYLL also requires employers to provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements at the time wages are paid. *See* NYLL § 195(1)(a), (3). Plaintiff has alleged that she received no such notices or statements during her employment, and Defendants offer the Court no basis to doubt these claims. Under NYLL § 198(1-b), employees are entitled to recover damages of $50.00 for each workday that the employer violates the payroll-notice provision, and under NYLL § 198 (1-d), employees are entitled to recover damages of $250 for each workday that the employer violates the wage-statement provision, up to $5,000 for each set of violations. In the instant case, that means that Plaintiff is entitled to $5,000 in payroll-notice statutory damages and $5,000 in wage-statement statutory damages.

Finally, employees may recover prejudgment interest with respect to their back wages, but not with respect to liquidated damages or violations of the wage-statement or wage-notice provisions. NYLL § 198(1-a); *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017). Under New York law, the relevant interest rate is nine percent per year. N.Y.C.P.L.R. § 5004; *see also Ortega v. JR Primos 2 Restaurant Corp.*, 2017 WL 2634172, at *6 (S.D.N.Y. June 6, 2017). Courts generally calculate interest from an intermediate date, "often choos[ing] the midpoint of the plaintiff's employment within the limitations period" as the start date. *See Ortega*, 2017 WL 2634172, at *6 (citing *Tackie v. Keff Enters., LLC*, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014)); N.Y.C.P.L.R. § 5001(b). The Court will award prejudgment interest for Plaintiff's back wages in this case, starting from the midpoint of Plaintiff's employment within the limitations period.

## II.    Claim under the IRC

Plaintiff also seeks judgment on her claim brought pursuant to 26 U.S.C. § 7434.  This provision of the IRC provides a private right of action for an individual who was the subject of a falsely filed information return, allowing her to bring a civil action for damages against "any person [who] willfully files a fraudulent information return with respect to payments purported to be made to" the individual.  26 U.S.C. § 7434(a); *see also Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 535 (2d Cir. 2011).  The term "information return" in this provision includes forms containing, among other things, the total amount of wages paid to an employee. *See* 26 U.S.C. §§ 7434(f), 6724(d)(1)(A)(vii), 6501(d).

Plaintiff alleges—and Defendants admit through their default—that Defendants willfully filed with the Internal Revenue Service an information return that did not show the total amount of wages paid to her, as required by the IRC.  Compl. ¶¶ 80–84; *see also Czerw v. Lafayette Storage & Moving Co.*, 2018 WL 5859525, at *3 (W.D.N.Y. Nov. 9, 2018) ("Willfulness in this context connotes a voluntary, intentional violation of a legal duty." (internal quotation marks and alteration omitted)).  According to the Complaint, Defendants paid only part of Plaintiff's compensation by check with tax withholdings and filed with the IRS a W-2 reflecting only the wages that Plaintiff was paid by check.  *Id.* ¶¶ 80, 81.  This is notwithstanding the fact that Defendants paid Plaintiff, in cash, more than the amount she was paid by check, *id.* ¶ 80, and that Defendants were the ones responsible for compensating Plaintiff, *id.* ¶ 21.  These allegations are sufficient to demonstrate that Defendants knew that they paid Plaintiff more than they reported to the IRS on a form that required them to report the income paid to an employee but that they nonetheless reported a lesser amount.  *See Czerw*, 2018 WL 5859525, at *3 (holding that elements of statutory violation requiring a showing that the information return was fraudulent

and that the defendant willfully issued it were met where plaintiff alleged that the defendants mailed plaintiff checks totaling one amount but filed a form with the IRS stating that defendants paid plaintiff a different, higher amount; that the defendants filed the form willfully, fraudulently, and purposely to reduce their tax obligations; and hat defendants misclassified plaintiff for the relevant tax year); *cf. Yunjian Lin v. Grand Sichuan 74 St. Inc.*, 2019 WL 3409892, at *4 (S.D.N.Y. July 29, 2019) (denying motion for default judgment on claim for violation of 26 U.S.C. § 7434 where plaintiff alleged no facts to support the elements of the violation and "merely include[d] the language of the statute and summarily state[d] that they are entitled to damages"). Plaintiff is therefore entitled to the $5,000 in statutory damages she seeks. *See* 26 U.S.C. § 7374(b) ("[U]pon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of [damages, costs, and attorneys' fees]."); Dkt. No. 24 ¶ 62.

### III. Claim for Corporate Combine

Plaintiff further seeks an order determining that Fresh Frutii and Fresh Smoothies are part of a corporate combine and are therefore jointly liable for the amounts owed in this action. "Where a corporation is a fragment of a larger corporate combine which actually conducts the business, the larger corporate entity may be held financially responsible for the acts of that corporation." *Island Seafood Co., Inc. v. Golub Corp.*, 303 A.D.2d 892, 893 (3d Dep't 2003); *cf. Walkovszky v. Carlton*, 18 N.Y.2d 414, 418 (1966) (explaining that "a corporation [being] a fragment of a larger corporate combine which actually conducts the business . . . would justify treating the corporation as an agent and piercing the corporate veil to reach the principal.").

In determining whether entities were part of a corporate combine, a court may consider "whether there is an overlap in ownership, officers, directors and personnel, inadequate

13

capitalization, a commingling of assets, or an absence of separate paraphernalia that are part of the corporate form, such that one of the corporations is a mere instrumentality, agent and alter ego of the other." *Id.* at 893–94; *see also D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 Fed. App'x 195, 198 (2d Cir. 2005) (summary order) (concluding that record evidence that commonly owned entities used common supplies like marketing materials (as well as e-mail addresses and telephone numbers), did not deal at arm's length with each other, and had payments sent to one company regardless of whether the invoice originated with the other company, supported finding of "veil piercing to impose liability on [two] entities so controlled by the [same people] as to operate as a single corporate combine"); *Goldberg v. Lee Exp. Cab Corp.*, 227 A.D.2d 241 (1st Dep't 1996) (holding that "cognizable claims for piercing the corporate veil were stated in the complaint" because it included "specific allegations that all of the corporation's cabs are centrally maintained and garaged; that borrowed funds are commingled to finance medallions and vehicles for all the entities; and that all the corporate books are under the control of the same persons.").

According to the Complaint, Fresh Frutti and Fresh Smoothies had common owners and were both controlled by Capello and Rivera. Compl. ¶¶ 13, 15, 16; *cf. id.* ¶ 22 (alleging that "Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Plaintiff's compensation."). The Complaint alleges that the Companies shared many of the same employees and utilized much of the same equipment and inventory, *id.* ¶¶ 17, 18, and alleges, on information and belief that the Companies: "operated as a single business operation," *id.* ¶ 87, had "records . . . maintained by the same persons and entities," *id.* ¶ 88, and were "merely fragments of a larger business" and "were not maintained as separate corporate entities," *id.* ¶¶ 90, 91. These deemed-to-be-admitted allegations—particularly the specific allegations that there

was overlapping personnel, ownership, equipment, and inventory—are sufficient to demonstrate that the Companies were part of the same corporate combine. *See Island Seafood Co., Inc.*, 303 A.D.2d at 893–94; *see also CAMOFI Master LDC v. Riptide Worldwide, Inc.*, 2012 WL 6766767 at * 12 n.11 (S.D.N.Y. Dec. 17, 2012) ("Although these allegations are made 'on information and belief,' they are deemed admitted by virtue of [d]efendants' default.").

## IV.     Attorneys' Fees

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover her reasonable attorney's fees and costs." *Najnin v. Dollar Mountain, Inc.*, 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015); *see* 29 U.S.C. § 216(b); NYLL § 198(1-a). The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended). The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable and must provide a court with sufficient information to assess the fee application. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011).

A court's focus is "on setting a reasonable hourly rate, taking account of all case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Board of Elections*, 522 F.3d 182, 189 (2d Cir. 2008). The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes

15

to spend the minimum necessary to litigate the case effectively." *Id.* at 190.  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, the court may reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).  Once a court has determined the appropriate hourly rate, it must also examine whether the number of hours billed was reasonable.  The court "should exclude excessive, redundant or otherwise unnecessary hours[.]" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

An attorneys' fee award may also include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  These "costs" may include photocopying, travel, telephone costs, *id.*, as well as filing fees and reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

The Court has reviewed the submissions of Plaintiff's counsel documenting the hours worked and the activities performed in support of this action.  Dkt. No. 24-10.  It accepts the costs figure of $782.00, which includes filing fees and process-server costs.  Dkt. No. 24 ¶ 69 n.1.  Plaintiff's counsel also submits a figure of 25 hours expended by attorneys on this case. The amount of time expended is somewhat higher than in recent similar cases before this Court, *see, e.g.*, *Estrada v. Therapy PLLC*, 2021 WL 4427068, at *5 (S.D.N.Y. Sept. 27, 2021) (reducing submitted figure of 20.80 hours worked to 19 hours); *de Jesus Morales v. Stalwart Group, Inc.*, 2021 WL 3774145, at *6 (S.D.N.Y. Aug. 24, 2021) (accepting figure of 19.80 hours expended); *Rosado v. Castillo*, 2021 WL 1172626, at *4 (S.D.N.Y. Mar. 29, 2021) (accepting figure of 18.2 hours expended); *but see Hong v. Mommy's Jamaican Market Corp.*, 2021 WL 4843912, at *5 (S.D.N.Y. Oct. 15, 2021) (reducing submitted figure of 53.3 hours worked to 40

hours). However, the specifics of this case, including initial settlement conversations and an additional claim brought under the IRC not often present in these cases, warrant a higher-than-usual amount of time spent on the case. The figure submitted does not contain certain time that is excessive, redundant, unnecessary, or otherwise unreasonable, so the Court will accept the requested figure of 25 hours worked.

Plaintiff's counsel seeks an hourly rate of $285.00 for the associate who expended the most time—24.4 hours—on this case, $325.00 for a slightly more senior associate who spent 0.3 hours on this case, and $435.00 for a senior associate with over fourteen years of experience in employment law who spent 0.6 hours on this case. *See* Dkt. No. 24 ¶¶ 66–68. This Court has approved hourly rates higher than or similar to this in other FLSA and NYLL cases. *See, e.g.*, *Hong*, 2021 4843912, at *5 (concluding that $460 average hourly rate was reasonable for counsel with over sixteen years of experience and relevant language skills); *Rosado*, 2021 WL 1172626, at *4 ("[A] rate of $375 per hour is within the range typically commanded by experienced wage and hour litigators."). The Court will approve the requested rates and award the requested $7,312.50 in attorneys' fees.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff is entitled to relief on her claims under the NYLL for back wages and payroll-notice and wage-statement violations; under the IRC for filing of a false information return; and for attorneys' fees and costs. Fresh Frutii and Fresh Smoothies, as part of a corporate combine, shall be jointly liable for the amounts set forth. The Clerk of Court is respectfully directed to prepare a judgment reflecting the Court's holding and setting forth Plaintiff's damages as follows:

- $22,033.75 in back wages under the NYLL, with 9% prejudgment interest accruing from

July 23, 2018, the midpoint of Plaintiff's employment with Defendants, until the date of judgment.

- $22,033.75 in liquidated damages.
- $5,000 for Defendants' violation of NYLL § 195(1); $5,000 for Defendants' violation of NYLL § 195(3); and $5,000 for Defendants' violation of 26 U.S.C. § 7434.
- Post-judgment interest on the above sums pursuant to 28 U.S.C. § 1961.

The judgment should further reflect that the Court awards attorneys' fees in the amount of $7312.50 and costs in the amount of $782.00.

The Clerk of Court is directed to close this case. Plaintiff shall transmit a copy of this Opinion and Order to Defendants through any means they have previously used to communicate with Defendants.

SO ORDERED.

Dated: December 9, 2021
      New York, New York

LEWIS J. LIMAN
United States District Judge